Daniel L. Barton (SBN 135806)
NOLAN, ARMSTRONG & BARTON, LLP
600 University Avenue
Palo Alto, California 94310
650/326-2980 ó Telephone
650/326-9704 ó Facsimile

Counsel for Defendant
DAVID PRINCE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 10-00153 CRB |
| | ) |
| Plaintiff, | ) **DEFENDANT'S PRETRIAL** |
| | ) **CONFERENCE STATEMENT:** |
| vs. | ) **STATEMENT OF FACTS AND** |
| | ) **MOTIONS IN LIMINE** |
| DAVID PRINCE, | ) |
| | ) **Date:**    September 8, 2011 |
| Defendant | ) **Time:**    9:00 a.m. |
| _____ | ) |

### INTRODUCTION

The defense submits this revised version of its Pretrial Conference Statement, including its Motions in Limine, to the court in preparation of the upcoming trial in the above-captioned case. This statement was previously submitted to Judge Fogel in preparation of the May 17, 2011 Pretrial Conference (Dkt. 59), in which Judge Fogel made preliminary rulings on each of these motions.  The defense has submitted only one additional motion that was not included with its original filing.  This motion is listed as Motion VII below.  Additionally, the defense has slightly revised several of the motions included in this statement.

Finally, the defense has re-submitted its õMotion in Limine to Prohibit the Prosecution from Using the Term ñPonzi Schemeøor Referring to Any High Profile ñPonzi SchemesøDuring

1  Trial" (Dkt. 66) as Motion IX included in this statement.  This motion was previously ruled on by

2  Judge Fogel but was originally submitted as a separate pleading from the Defendant's Pretrial

3  Conference Statement (Dkt. 59).  The motion is unchanged from its original filing.  The defense

4  will be re-submitting its "Motion to Compel Immunity" in a separate pleading.[1]

5

6                          **STATEMENT OF FACTS**

7          Defendant David Prince is charged as the sole defendant in Indictment CR-10 00153,

8  setting forth twelve counts of wire fraud.  Each count relates to a loan (or investment) made to an

9  investment program associated with Mr. Prince, specifically MJE Invest!, Dawnstar Alliance or

10 the Leopard Fund.  Mr. Prince is an attorney licensed to practice in California.

11         In approximately August 2005, David Prince, Matthew Ellsworth and Lance Lee worked

12 together to set up a company that accepted loans and paid interest on the loans pursuant to a

13 written contract.  The companies invested funds in the options market on an Ameritrade account

14 under Mr. Prince's name.

15         The government alleges that Mr. Prince, and others acting with him, made false statements

16 to potential lenders regarding: (1) the existence of a guarantee on their principal (loan); (2) the rate

17 of return; (3) the performance history of the funds; (4) the treatment of the investment as a

18 "business loan;" (5) the experience, qualifications and histories of the traders; (6) the method of

19 calculating interest payments; (7) the fund's compliance with SEC regulations, and the status of

20 Mr. Prince as an attorney; and (8) that the loans would be put to an investment-related use.

21

22

23

24

25 ───────────────────
[1] The defense previously filed this motion to compel immunity for Dr. Lance Lee (Dkt. 61).  The
26 defense intends on renewing this motion.  Magistrate Grewal has issued the defense's revised
subpoena duces tecum for documents from Dr. Lee and has denied Dr. Lee's Motion to Quash this
27 subpoena (Dkt. 143).  To date, Dr. Lee has not issued the requested documents.  He has also been
served a trial subpoena by the defense.

28

The defendant acknowledges participating in the companies, accepting loans, and paying interest. The transactions are well-documented; each loan was effectuated through a written contract which contained an integration clause. Initially, defendant's company paid lenders the interest indicated in the contracts (loan agreements) and returned the loans (principal) of lenders who chose to terminate their relationship with the company. At the time monies were solicited and received, defendant was optimistic regarding his ability to generate substantial returns in collaboration with the trader(s) and to pay interest to lenders as promised in the agreements.

At some point, however, the fund decreased in value due to poor trade decisions, and the defendant's company lost the ability to pay interest or to return the principal to various lenders. Ultimately, the investment company failed, and many lenders lost their investments.

The defense of this case is that, at all relevant times, Mr. Prince intended to comply with the contracts and only ceased performing on the contracts when he lost the ability to do so due to the failure of his venture. Additionally, Mr. Prince will defend the case on the grounds that all representations made to potential lenders were either true or made in good faith.

The prosecution has granted immunity to Matthew Ellsworth, who will presumably testify regarding the efforts to attract lenders (investors) during the initial capitalization of the company and continuing through approximately February 2006. Mr. Ellsworth will also testify regarding loans received and payments made to lenders. Mr. Ellsworth was aware of the role of Leopard Fund partner Lance Lee and the existence of outside trader(s) who made the actual investment decisions for the funds.

The prosecution has not offered immunity to Lance Lee, and it is not expected that the government will call Lance Lee as a witness at trial. Mr. Prince intends to call Mr. Lee as a witness, but anticipates that Mr. Lee will invoke his Fifth Amendment privilege, as he did before the grand jury. If Mr. Lee were to testify, it is expected that he would testify regarding the

1   identity, experience, background and history of the trader or traders, Mr. lee's relationship with the

2   trader or traders, and how the fund compensated the trader(s) operating on behalf of the

3   investment programs.

4                                        **MOTIONS IN LIMINE**

5           Defendant David Prince, through counsel, respectfully submits the following motions in

6   limine for consideration by this court in the above-entitled matter.

7

8   I.      **The defense moves the court to exclude all evidence of extrinsic statements that**
            **contradict the terms of each complaining witness's signed MJE Invest! and/or**
9           **Leopard Fund contracts.**

10          No evidence of any representations or statements that contradict the written contracts

11  signed by each investor with MJE Invest!, LLC, or Dawnstar Alliance, LLC (doing business as the

12  Leopard Fund) should be admitted at trial.

13          If a signed contract includes an integration clause, then the parol evidence rule prohibits

14  the introduction of extrinsic statements that contradict the terms of the contract.  *Traumann v.*

15  *Southland Corp.*, 842 F.Supp. 386, 390 (N.D. Cal. 1993).  An integration clause is a õ[a]

16  contractual provision stating that the contract represents the parties' complete and final agreement

17  and supersedes all informal understandings and oral agreements relating to the subject matter of

18  the contract.ö  Black's Law Dictionary (8th ed.2004).  If a contract includes such a provision and is

19  signed by both parties, then courts must presume that the contract constitutes a complete and

20  accurate representation of the parties' agreement.  *Traumann*, 842 F.Supp. at 390-391.

21  Accordingly, the parol evidence rule bars the admission of extrinsic evidence used to contradict

22  the written contract's terms since the contract is binding and was intended by the parties to include

23  all relevant terms of the negotiations.  *Id.*; see also *U.S. v. Reyes Pena*, 216 F.3d 1204, 1212 (10th

24  Cir. 1997) citing *U.S. v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997).

25

26

27

28

                                                    4

The parol evidence rule can apply in criminal cases, as well as civil cases.  See, e.g., *Reyes Pena*, 216 F.3d at 1211-1213 (applying the parol evidence rule in the context of criminal plea agreements).  Additionally, even if fraud is being alleged, a court should not limit the rule's application in a case involving a written contract with clear and unambiguous terms and which includes an integration clause.  By ignoring the express terms of contracts,

> "contracts would not be worth the paper on which they are written." ... The exception for a party who "has been induced by a fraudulent misrepresentation to enter the contract" ... must not be stretched or inflated in a way that "would severely undermine the policy of the parol evidence rule, which is grounded in the inherent reliability of a writing as opposed to the memories of contracting parties." ... We need not belabor the point. We have here the case of "a party with the capacity and opportunity to read a written contract, who [has] execute[d] it, not under any emergency, and whose signature was not obtained by trick or artifice", such a party, if the parol evidence rule is to retain vitality, "cannot later claim fraud in the inducement."

*One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C. Cir.1988) (Bader Ginsberg, J.) (citations omitted).

In the instant case, each of the eleven alleged victims signed contracts before loaning their money to either MJE Invest!, or Dawnstar Alliance, LLC (doing business as The Leopard Fund).  Both the MJE Invest! and Leopard Fund contracts explicitly included integration clauses, which stated that the contracts constituted the entire agreement between the parties.  The MJE Invest! and Leopard Fund contracts both read in relevant part:

> "This agreement constitutes the entire agreement between the parties and no other oral and written Agreements exist or, any such prior or contemporaneous writing or agreement, has no effect on the matters covered by this Agreement.  All prior agreements, representations and warranties, express or implied, oral or written, with respect to the subject matter hereof, are hereby superseded by this agreement.  This is an integrated contract."

Each of the eleven lenders signed contracts which included this language.  Accordingly, the prosecution is barred from providing any extrinsic evidence to contradict the contracts' language.  Such extrinsic evidence includes statements purportedly made during any other written or oral

agreement or negotiations between the parties.  By allowing the admission of such extrinsic evidence, the written contracts would be completely devalued, especially where, as here, the prosecution can present no evidence that the lenders were incompetent to enter into contracts or that they were not tricked into signing them.  See, e.g., *One-O-One Enterprises, Inc.*, 848 F.2d at 1287.

While some courts have ruled that the parol evidence rule does not apply in a criminal case where the government was not a party to the contract at issue, *Mesch v. U.S.*, 407 F.2d 1286 (10th Cir. 1969) cert. denied *Baldwin v. U.S.*, 395 U.S. 979, 89 S.Ct. 2133, 23 L.Ed.2d 767 (1969), no published Ninth Circuit opinion has pronounced such a rule.  Courts which have prohibited the application of the parol evidence rule in such cases have premised their rulings on the theory that because the government was not a party to the original contract, it is not bound by it and therefore has the liberty to provide evidence extrinsic of it.  *Gibson v. U.S.* 268 F.2d 586, 589 (D.C. Cir. 1959).

The parties to the original contracts at issue here still seek to gain through the criminal prosecution of Mr. Prince.  After all, if Mr. Prince is found guilty of any of the offenses alleged, he will have to pay restitution in the amount lost to the complaining witnesses, who were the original parties to the contracts at issue.  Accordingly, because the original parties can gain through this criminal prosecution just as they would in a civil lawsuit, the fact that Mr. Prince is being criminally prosecuted as opposed to being civilly sued is immaterial to the applicability of the parol evidence rule.  Here, because Mr. Prince faces criminal sanctions in addition to paying restitution to any alleged victims, his potential punishment is even more severe than it would be in a civil lawsuit.

Additionally, the prohibition on the parol evidence rule's application to criminal fraud cases unduly diminishes the prosecution's evidentiary burden.  It does not further the interests of

**DEFENDANT'S PRETRIAL CONFERENCE STATEMENT: STATEMENT OF FACTS AND MOTIONS IN LIMINE**

1   justice to apply this stringent evidentiary rule only in civil cases, which have a lower burden of

2   proof and which do not result in a loss of liberty.  The distinction between applying this rule only

3   in civil cases appears even more unjust because the parol evidence rule *is* applicable in civil RICO

4   cases where the alleged predicate act that must be proved is criminal fraud.  See, e.g., *Jordan v.*

5   *Berman*, 792 F.Supp. 380, 387 (E.D. Penn. 1992).   Accordingly, it would be irrational and

6   arbitrary to apply the parol evidence rule in a civil case, in which the same elements of fraud must

7   be proved as in the instant case, and to decline to enforce the parol evidence rule here.   Thus, other

8   courtsø suggestion that the parol evidence rule is inapplicable in criminal fraud cases is

9   unpersuasive.  It devalues partiesø competence to enter into contracts, as well as contradicts

10   fundamental notions of justice and fairness.

11           For the foregoing reasons, the defense moves that extrinsic evidence that contradicts the

12   terms of the MJE Invest! and Leopard Fund contracts should be excluded in the instant case.

13   **II.      The defense moves to exclude all evidence regarding statements or actions that**
        **occurred after each lender wired his or her money to MJE Invest! or The**
14      **Leopard Fund.**

15           Evidence about events occurring after the various lenders transferred money to either MJE

16   Invest! or the Leopard Fund should be excluded because such evidence is irrelevant and its

17   probative value is substantially outweighed by its unfairly prejudicial effect.

18           Only relevant evidence is admissible at trial.  Fed. R. Evid. 401.  Relevant evidence is

19   evidence öhaving any tendency to make the existence of any fact that is of consequence to the

20   determination of the action more probable or less probable than it would be without the evidence.ö

21   Fed. R. Evid. 402.  In order for evidence to be admissible, its probative value must not be

22   substantially outweighed by any unfair prejudice, undue delay or confusion that its admission

23   would cause.  Fed. R. Evid. 403.

24           In the instant case, the crimes alleged are all for acts of wire fraud.  The prosecutionøs case

7

is premised on a theory that acts of fraud occurred when each complaining witness was conveyed material misrepresentations about MJE Invest! and/or the Leopard Fund, and that the witnesses then wired money to be loaned to these programs based upon these misrepresentations.

An act of fraud is completed at the time that a misrepresentation is made or money is mailed or wired. See *U.S. v. Sayakhom*, 186 F.3d 928, 943 (9th Cir. 1999) (act of mail fraud completed when application materials were sent to potential customers); *U.S. v. Savage*, 67 F.3d 1435, 1442 (acts of mail fraud and wire fraud completed when defendant mailed promotional information or wired money). The success of the scheme and the result of the alleged misrepresentations are immaterial in determining whether fraud occurred. *U.S. v. Utz*, 886 F.2d 1148, 1150-1151 (9th Cir. 1989), cert. denied, 497 U.S. 1005 (1990). Thus, in *U.S. v. Sayakhom*, 186 F.3d 928, 943 (9th Cir. 1999), the Ninth Circuit ruled that events occurring after the fraud was completed may sometimes constitute evidence of other crimes. *Sayakhom*, 186 F.3d at 943.

Accordingly, in the instant case, testimony regarding events that occurred after money was wired by each of the complaining witnesses is irrelevant and should not be admitted at trial. The acts of alleged fraud, if proved, were completed once the alleged misrepresentations were made and money had been wired by each complaining witness. Like in *Sayakhom*, any other statements or events made after the fraud was completed could constitute evidence relating to other potential crimes or bad acts, which are generally inadmissible against criminal defendants at trial. Fed. R. Evid. 404(b). Furthermore, whether any money was lost by a complaining witness is irrelevant because the success of the scheme does not determine whether fraud occurred. *Utz*, 886 F.2d at 1150-1151. Accordingly, each complaining witness should only be able to testify regarding events up until the point in which the witness wired his or her money to the funds.

For the foregoing reasons, any testimony regarding events that occurred after money was wired by each complaining witness is irrelevant, and its probative value is substantially

**DEFENDANT'S PRETRIAL CONFERENCE STATEMENT: STATEMENT OF FACTS AND MOTIONS IN LIMINE**

outweighed by the unfair prejudice and unnecessary delay that would be caused by the evidence's admission. Accordingly, the defense requests that such testimony be ruled inadmissible.

### III.   The defense moves to exclude any evidence of the defendant's prior bad acts.

The defense requests that all evidence of prior bad acts committed by the defendant should be ruled inadmissible at trial.  Rule 404, subdivision (b) of the Federal Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show in action in conformity therewith."  Fed. R. Evid. 404(b).  This mirrors subdivision (a) of the same rule, which provides that evidence of a person's character more generally is not admissible to prove action in conformity with that character evidence on a particular occasion.  Fed. R. Evid. 404(a).  Such evidence has no probative value, and in the instant case, the danger that it could prejudice the jury substantially outweighs any probative value that the government could identify.  Fed. Rule Crim. Proc. 609(a)(1).

If the prosecution seeks to present any evidence of the defendant's prior acts for any purpose, the defense requests that the prosecution provide notice of such evidence prior to trial along with a specific factual statement describing such evidence.  Fed. R. Evid. 404(b).

### IV.   The defense moves to exclude any evidence related to a "Cease and Desist" order to Dawnstar Alliance and Mr. Prince issued by the Texas State Securities Board.

On May 16, 2006, the Texas State Securities Board issued a "Cease and Desist" order to Dawnstar Alliance and Mr. Prince based on alleged violations of the Texas Securities Act.  The ruling was a default ruling and not the result of a contested process.  The government seeks to introduce four pieces of evidence in relation to the acts undertaken by the Texas State Securities Board: "(1) the basis for the investigation by the Texas State Securities Board into the defendant's activities and communications related to the investigation; (2) the four orders from the Texas Order; (3) that defendant agreed to be bound by these orders; and (4) that defendant subsequently did not abide by these orders despite his agreement to do so."  *See* United States' Motion in

9

Limine to Admit Texas Securities Board Evidence at 2-3 (Dkt. 56).  The government advances two arguments as to why this evidence is admissible.  First, the government argues that this evidence is relevant because it is "inextricably intertwined" with the acts of alleged fraud in the instant case; second, the government argues that such evidence constitutes relevant character evidence under Federal Rule of Evidence 404(b) because it indicates the defendant's motive, intent, and knowledge in relation to the earlier acts of alleged fraud.  *See* United States' Motion in Limine to Admit Texas Securities Board Evidence at 4-7.

As an initial hurdle, the prosecution has failed to show how evidence of the Texas State Securities Board's order—or e-mails sent by Mr. Prince that were allegedly in violation of it—does not constitute inadmissible hearsay.  Even if this evidence did not constitute inadmissible hearsay, however, such evidence is not relevant because it is not "inextricably intertwined" with the actions at issue in the instant case, nor is it relevant character evidence under Federal Rule of Evidence 404(b).

1. **Evidence of the Texas State Securities Board's Order—or any of the facts underlying it—constitute inadmissible hearsay.**

The Texas Board's ruling is hearsay of the most unreliable type.  Evidence of any action undertaken by the Texas State Securities Board would constitute hearsay because it constitutes an out-of-court statement offered to prove the truth of the matter asserted—that is, the Texas Board's determination and the facts underlying this determination.  Fed. R. Evid. 801, 802.  The prosecution has failed to show how this order and any of the facts underlying this order fall within a recognized exception to the hearsay rule.  This evidence is hearsay of the most unreliable type and accordingly is inadmissible.

2. **The admission of the Texas State Securities Board's "Cease and Desist" Order, and Mr. Prince's alleged violations of it, is not relevant because it is not "inextricably intertwined" with the acts of alleged fraud at issue in this case.**

**DEFENDANT'S PRETRIAL CONFERENCE STATEMENT: STATEMENT OF FACTS AND MOTIONS IN LIMINE**

Evidence of the Texas State Securities Board's actions is not relevant because it is not "inextricably intertwined" with the alleged charges of fraud. The Texas Board's order itself is not relevant, and the alleged violations of the Texas Board's order occurred months after the charged acts of alleged fraud occurred; additionally, the violations were not at all related to MJE Invest!, Leopard Fund, or Dawnstar Alliance. Accordingly, such evidence is outside the Indictment's scope, and it does not reveal a state of mind that existed at the time of the earlier acts of fraud. Additionally, the government has provided inadequate proof that Mr. Prince ever even violated the Texas State Securities Board's order, which would thereby indicate such a fraudulent intent.

In order for conduct to be "inextricably intertwined" with the actions at issue in a given case, the conduct must constitute "part of the transaction that serves as the basis for the criminal charge" or "[is] necessary to'... permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-1013. (9th Cir. 2005). "Coincidence in time" between the charged conduct and the "inextricably intertwined" conduct is insufficient, however, for this exception to rule 404(b) to apply. *Id.* at 1013. For example, the Ninth Circuit ruled that a defendant's possession of a small amount of methamphetamine at the time he was arrested was not "inextricably intertwined" with the conduct the defendant was ultimately charged with— that is, possession of a hydriodic acid with knowledge that it would be used to manufacture methamphetamine. *Id.* The defendant was arrested for possessing the acid when his car was pulled over by local police officers; the personal amount of methamphetamine found on him after he was arrested was not related to the charged conduct because there was no proof that the personal amount was related to why the defendant had the hydriodic acid— that is, as part of his role in a drug conspiracy. *Id.* Accordingly, the personal amount of methamphetamine found was not "inextricably intertwined" with the charged conduct

1   because it was not part of the same transaction, and it did not provide any sufficient context

2   relating to why the defendant had the hydriodic acid.  *Id.*

3          The prosecution asserts that the defendant's alleged violation of the "Cease and Desist"

4   order here involves "the same facts as those underlying the indictment in this case, occur in the

5   same time period, and include some of the same victims," and therefore such evidence is relevant

6   because it is "inextricably intertwined" with the conduct at issue in the instant case.  *See* United

7   States' Motion in Limine to Admit Texas Securities Board Evidence at 4.  Evidence of the Texas

8   Board's order is not relevant, however, because it simply does not matter that Mr. Prince was

9   found in violation of a Texas statute based on an uncontested judicial process.  *See* Defendant's

10  Pretrial Conference Statement: Statement of Facts and Motion in Limine at 8-10.

11

12         Similarly, evidence of the Board's order is not relevant to show that Mr. Prince's alleged

13  violation of it indicates a fraudulent intent.  The Texas Board's Emergency "Cease and Desist

14  Order" was sent to the defendant on May 16, 2006 and became final on June 28, 2006; Mr.

15  Prince's alleged violations of it in September 2006 and July 2007 occurred months after the final

16  act of alleged fraud occurred.  *See* Indictment at 5-6 (Dkt. 1) (noting the final act of alleged fraud

17  occurred on May 26, 2006); *see also* United States' Motion in Limine to Admit Texas Securities

18  Board Evidence at 3.  Accordingly, Mr. Prince's alleged disregard of the Board's order is not

19  relevant to show he committed fraud on earlier dates.  At most, even if this evidence was relevant

20  to show Mr. Prince possessed a fraudulent intent, it would only be relevant to show that such an

21  intent developed months after the charged acts of alleged fraud occurred.  Accordingly, just as the

22  defendant's personal possession of methamphetamine in *Vizcarra-Martinez* provided no context

23  as to his charged conduct, evidence of the alleged violation of the Texas Board's order provides no

24  context to acts of alleged fraud that occurred months earlier.

25

26

27

28

Furthermore, such evidence simply falls outside the scope of the Indictment because the charged acts of alleged fraud were only related the 5%-25% programs, namely MJE Invest!, Dawnstar Alliance, and The Leopard Fund.  *See Indictment* at 1.  The e-mails allegedly in violation of the order are offers to join *new programs* – and not the 5%-25% programs as charged in the Indictment.  At best, such evidence amounts to uncharged misconduct, thereby falling outside the scope of the Indictment.[2]

Perhaps even more fundamentally, the government has failed to offer adequate proof that Mr. Prince ever even violated the Board's orders, thereby indicating a fraudulent intent relevant to the earlier charged acts of alleged fraud.  The government specifically asserts that the e-mail in July of 2007 to Bobby Joe Williams, offering him an opportunity to invest in a project described as an "E&R Company Enhanced Oil Recovery, Project A6," and the e-mail to Mr. Williams on September 11, 2006 offering him the opportunity to "join a secured trading program" constituted violations of the Texas Board's order.  *See* United States' Motion in Limine to Admit Texas Securities Board Evidence at 3.  The prosecution has simply provided no proof that the offers as part of the "E&R Recovery Project" and the "secured trading program" involved the sale of unregistered securities, were based on materially false statements, or were otherwise fraudulent in violation of the Texas Board's orders.  Accordingly, the prosecution has failed to provide any proof that Mr. Prince ever violated the board's orders, and thereby had a fraudulent intent, albeit one that developed outside the time frame of the charged acts of alleged fraud.

---

[2] Similarly, the defense has already moved to exclude evidence regarding statements or actions that occurred after each lender wired his or her money to MJE Invest or The Leopard Fund because the acts of fraud were completed at the time that each lender wired money.  *See* Motion III *ante*.  Evidence relating to statements or offers made to Bobby Joe Williams and Shawn Sullivan after they had loaned their money to these programs would similarly constitute such evidence and are not relevant because the acts of fraud had already been completed at the time money was wired by each individual lender.

DEFENDANT'S PRETRIAL CONFERENCE STATEMENT: STATEMENT OF FACTS AND MOTIONS IN LIMINE

Accordingly, the prosecution has provided no adequate proof that any evidence relating to the Texas Board is "inextricably intertwined."  The alleged violations of the Board's Order occurred months after the charged acts of alleged fraud occurred, and the violations were not related to MJE Invest,¹ Leopard Fund, or Dawnstar Alliance.  Accordingly, such evidence is outside the Indictment's scope, and it does not reveal a state of mind that existed at the time of the earlier acts of fraud.  Finally, the government has provided inadequate proof that Mr. Prince ever even violated the Texas State Securities Board's order since there has been no proof that the September 2006 and July 2007 e-mails involved the sale of unregistered securities, were based on materially false statements, or were fraudulent in violation of that order.

### 3. Evidence relating to the Texas State Securities Board does not Constitute Relevant Character Evidence under Federal Rule of Evidence 404(b).

Alternatively, the prosecution asserts that this evidence constitutes admissible character evidence under Federal Rule of Evidence 404(b).  Such "other bad acts" evidence is admissible as character evidence only if it is relevant for a purpose other than to show a defendant's propensity to commit a crime.  *United States v. Vizcarra-Martinez*, 66 F.3d at 1015.  The issuance and alleged violation of a Texas "Cease and Desist" Order does not fall within the scope of this rule because it is simply not probative of the defendant's intent, knowledge, or lack of mistake as related to the charged acts.  Fed. R. Evid. 404(b).

The government asserts that evidence of the Texas Board's order is relevant character evidence because it demonstrates "the defendant was aware that his activities with respect to the charged scheme had been construed to constitute fraud, that defendant agreed to be bound by an order designed to prevent further fraud, and that defendant failed to comply with this order."  *See* United States' Motion in Limine to Admit Texas Securities Board Evidence at 3.  Here, however, the alleged violations of the Texas Board's order are not probative because they did not occur until after the acts of alleged fraud had occurred.  Therefore, such evidence is not indicative of a

1   fraudulent intent that existed at the time of the prior acts, and therefore does not constitute

2   admissible character evidence.

3         Accordingly, any action undertaken by the Texas State Securities Board— or the evidence

4   underlying the basis of the Board's determination— should not be admitted into evidence in the

5   instant case.

6

7   **V.    The defense moves to exclude any reference to any California State Bar**
        **disciplinary action against Mr. Prince.**

8         This court should prohibit any reference to any California State Bar disciplinary action

9   taken against Mr. Prince.  Such evidence constitutes inadmissible hearsay evidence. Fed. R. Evid.

10  801, 802.  Additionally, it is not relevant to the instant case and does not constitute valid character

11  or impeachment evidence.  Fed R. Evid. 402, 404, 608.

12

13        Mr. Prince was disciplined by the California State Bar on November 22, 2007.  The

14  disciplinary action stemmed from two separate incidents that are unrelated to the charges in the

15  instant case.  The first incident related to a custody dispute and juvenile dependency proceeding

16  originally filed in California state court, and later also filed in federal court.  The second incident

17  was based on a conservatorship proceeding.  Mr. Prince's discipline by the California State Bar

18  was based on a stipulation agreed to by both parties that Mr. Prince failed to perform legal services

19  competently and that he failed to obey a court order.

20

21        Evidence of any California State Bar disciplinary action taken against Mr. Prince is

22  inadmissible because it constitutes inadmissible hearsay evidence.  An out-of-court statement

23  offered to prove the truth of the matter asserted constitutes hearsay and is generally inadmissible at

24  trial because such evidence is inherently unreliable.  Fed. R. Evid. 801, 802. The admission of any

25  disciplinary action by the California State Bar would constitute hearsay because it is an out-of-

26  court statement offered to prove the truth of the matter asserted— that disciplinary action was

27  taken by the California State Bar against Mr. Prince.  There is no non-hearsay relevancy to any

28

15

State Bar disciplinary action against the defendant.  Any factual determinations underlying the disciplinary action would similarly constitute hearsay evidence.  Accordingly, all such evidence is inadmissible.

Because neither of the underlying incidents relate to the instant case or similar conduct, the prosecution could only admit such evidence as character or impeachment evidence.  Fed. R. Evid. 401-403.  The California State Bar disciplinary action is not admissible as character evidence because such evidence is not generally admissible against a criminal defendant at trial; that is, evidence of a person's character– or other incidents relating to a person's character– are not admissible to prove that person acted in accordance with that evidence in a later case.  Fed. R. Evid. 404(a).  Additionally, because the incidents serving as the basis of the State Bar proceeding are dissimilar from anything involved in the instant case, the evidence lacks probative value for other purposes, such as evidence of motive, opportunity, intent, preparation, plan, or knowledge in relation to the charges of wire fraud alleged by the prosecution.  Fed. R. Evid. 404(b).

If Mr. Prince testifies in the instant case, such acts also cannot be used as impeachment evidence.  Fed. R. Evid. 608-609. Specific instances of misconduct which did not result in a criminal conviction may only be used as impeachment evidence on cross-examination if the instances relate to a person's character for truthfulness or untruthfulness.  Fed. R. Evid. 608.  Here, the incidents leading to Mr. Prince's State Bar disciplinary action were based on a failure to competently perform legal services and a failure to act in accordance with a court order; thus, the disciplinary action was not based on Mr. Prince's character for truthfulness or untruthfulness.  Accordingly, the State Bar disciplinary action does not constitute admissible impeachment evidence.

**VI.    The defense moves to exclude any witness from court unless that witness is testifying.**

The defense requests that no witness should be allowed to hear the testimony of other

16

witnesses.  A witness should only be permitted to be in the courtroom when he or she is personally testifying.  Fed. R. Evid. 615.

**VII.    The defense moves to exclude any reference to Mr. Prince's negligent storage of firearms, and any consequences of this negligent storage.**

In a statement made by Sue Ross at Mr. Prince's initial detention hearing on March 10, 2010, Ms. Ross recounted an incident which occurred while Mr. Prince was renting out a room at her house.  According to Ms. Ross, Mr. Prince owned several firearms and stored them in the house's garage without first telling her about them.  According to Ms. Ross, the guns were taken by one of her friend's teenage sons, and the son used the firearms to commit suicide.  Ms. Ross was an administrator of MJE Invest!, Dawnstar Alliance, and Leopard Fund, and is currently listed as a witness on the prosecution's witness list.

The defense moves to exclude any reference to this incident because it is irrelevant to the crimes alleged in the Indictment and because the evidence's minimal probative value is substantially outweighed by the evidence's unfairly prejudicial effect.  Fed. R. Evid. 401, 403. Furthermore, any reference to this incident would not qualify as admissible character or impeachment evidence.  Fed R. Evid. 404, 608.

The alleged crimes at issue involve allegedly fraudulent investment programs.  The only issues relevant in the instant case involve statements made to lenders about these programs and whether these statements amounted to misrepresentations.  Because nothing in this case relates to guns or firearms whatsoever, evidence of the firearms incident is simply irrelevant.  This incident at most only shows that Mr. Prince possessed firearms and that he negligently stored them. Though Ms. Ross was an administrator of the programs, evidence of this incident only amounts to a source of personal conflict between Ms. Ross and Mr. Prince in their capacity as roommates— not as administrators of the investment programs.  Accordingly, such evidence does not make any

1   fact at issue in this case more or less likely to have occurred, and therefore is irrelevant.  Fed. R.

2   Evid. 401-402.

3        Furthermore, this evidence's minimal probative value is substantially outweighed by the

4   unfair prejudice that the evidence's admission would cause.  Fed. R. Evid. 403.  The very nature of

5   the incident itself – involving firearms and a teenage suicide – is highly inflammatory.

6   Accordingly, evidence of the incident would be unfairly prejudicial to the defendant.  In light of

7   the incident's minimal relevance, this unfair prejudice substantially outweighs the incident's

8   probative value.  Thus, evidence of this incident is inadmissible under Federal Rule of Evidence

9   403.

10

11       Additionally, the incident does not constitute admissible character evidence.  Such

12  evidence is generally deemed inadmissible against a criminal defendant at trial.  Fed. R. Evid. 404.

13  Evidence of other wrongs or acts are only admissible against a defendant if the evidence is

14  relevant in providing proof of motive, opportunity, intent, preparation, plan, knowledge, identity,

15  or absence of mistake in relation to the charged crimes.  Fed. R. Evid. 404, subd. (b).  Evidence of

16  this incident provides no context to the investment programs or the charged crimes and therefore

17  qualifies as inadmissible character evidence.

18

19       Finally, the evidence is also not admissible as impeachment evidence if the defendant

20  chooses to testify in the instant case.  Evidence of specific incidents of conduct only constitutes

21  valid impeachment evidence if it relates to the witness's character for truthfulness or

22  untruthfulness.  Fed. R. Evid. 608.  The firearms incident only shows that the defendant was

23  negligent in storing firearms, not that he was untruthful, and therefore does not qualify as valid

24  impeachment evidence

25

26       Accordingly, the defense requests that evidence of Mr. Prince's negligent storage of

27  firearms, and the resulting suicide, should be ruled inadmissible.

28

**DEFENDANT'S PRETRIAL CONFERENCE STATEMENT: STATEMENT OF FACTS AND MOTIONS IN LIMINE**

**VIII.   The defense moves to allow evidence that investors in MJE Invest! or the Leopard Fund received their monthly interest payments and had their principal returned.**

The defense requests that the court allow the defense to present evidence regarding individuals who invested in MJE Invest! or the Leopard Fund and who are not included as alleged victims in the Indictment.  The evidence could be presented either through the testimony of the lenders themselves or elicited through the cross-examination of Matthew Ellsworth.  Such evidence will establish that many lenders received their monthly interest payments and had their principal funds returned when requested.  This testimony is relevant because it will provide corroboration of the defense theories that Mr. Prince acted in good faith and that MJE Invest! and the Leopard Fund were not intended as schemes to defraud.

If a defendant acts in good faith, then he is not guilty of wire fraud.  *U.S. v. Cusino*, 694 F.3d 185, 188 (9th Cir. 1982).  One of the required elements of wire fraud is that the defendant acted with the specific intent to defraud.  18 U.S.C. 1343.  Accordingly, the ôgood faithö defense constitutes an absolute defense to this charge because it negates the specific intent requirement. *Cusino*, 694 F.3d at 188.  If a defendant honestly and reasonably believed that an enterprise was legitimate, then he cannot have formed the specific intent to defraud as required under 18 United States Code section 1843.  *Id.*  In order to negate a showing of the requisite intent, the defense is entitled to provide evidence of collateral transactions that indicate the defendant was acting in good faith.  *U.S. v. Copple*, 24 F.3d 535, 545, n. 16 (3rd Cir. 1994).

Accordingly, in the instant case, the defense seeks to offer evidence that the defendant did not act with the intent to defraud and that he acted in good faith.  Testimony from witnesses who received their monthly interest payments and who had their principal returned is relevant because it tends to prove that the defendant did not have the required intent to defraud the lenders in MJE Invest! or The Leopard Fund and that these funds did not operate as schemes to defraud.

///

19

**DEFENDANT'S PRETRIAL CONFERENCE STATEMENT: STATEMENT OF FACTS AND MOTIONS IN LIMINE**

IX.   **The defense moves to prohibit the prosecution from using the term "Ponzi Scheme" or Referring to any High-Profile "Ponzi Schemes" during trial.**

In the United States' Witness List in the instant case, the government lists an "Investment Fraud Witness (to be determined)" as a potential witness.  This witness will allegedly testify about the characteristics of a "Ponzi" investment fraud scheme.  *See* United States' Witness List at 2 (Dkt. 57).

The defense moves to prohibit the prosecution from using the term "Ponzi scheme," offering any testimony about "Ponzi schemes," or making reference to any high-profile "Ponzi schemes" at trial.  The use of the term "Ponzi scheme" is unsupported by the facts in the instant case, and given the recent publicity of high-profile "Ponzi schemes," the use of the term by the prosecution would be unfairly prejudicial and inflammatory in reference to MJE Invest, Dawnstar Alliance, and the Leopard Fund.  For similar reasons, the prosecution should be restricted from drawing any comparisons between the instant case and any high-profile "Ponzi schemes," including those involving Bernard ("Bernie") Madoff, Allen Stanford, and Scott Rothstein.

Because the prosecution has inherent credibility and influence as a spokesman for the United States, *United States v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979), it is prohibited from making any unfair accusations or references in relation to a defendant or the actions at issue in a given case.  *See People of Territory of Guam v. Torre*, 68 F.3d 1177, 1179-1180 (9th Cir. 1995). While the prosecution may make arguments based on reasonable inferences of the evidence presented, *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993), the prosecution must not make comments calculated to arouse the passions or prejudice of the jury.  *United States v. Leon-Reyes*, 177 F.3d 816, 822 (9th Cir. 1999) citing *Vierek v. United States*, 318 U.S. 236, 247-248, 63 S.Ct. 561, 87 L.Ed. 734 1943).  Accordingly, in the instant case, the prosecution should be prohibited from referring to the acts of MJE Invest, Dawnstar Alliance, or the Leopard Fund as constituting a "Ponzi scheme" or from making any comparison between the activities of these

20

programs and those of any high-profile "Ponzi schemes."  The facts in the instant case do not give

rise to any reasonable inference that Mr. Prince was involved in a "Ponzi scheme," and any

reference to this term would be unfairly prejudicial and inflammatory.

The term "Ponzi scheme" derived from acts of criminal fraud committed by Charles Ponzi

from 1919-1920.  In *Cunningham v. Brown*, 265 U.S. 1 (1924), former Chief Justice Taft of the

United States Supreme Court described the fraud committed by Mr. Ponzi as follows:

> In December, 1919, with a capital of $150, he began the business of borrowing
> money on his promissory notes. He did not profess to receive money for investment
> for account of the lender. He borrowed the money on his credit only. He spread the
> false tale that on his own account he was engaged in buying international postal
> coupons in foreign countries and selling them in other countries at 100 per cent.
> profit, and that this was made possible by the excessive differences in the rates of
> exchange following the war. He was willing, he said, to give others the opportunity
> to share with him this profit. By a written promise in ninety days to pay them $150
> for every $100 loaned, he induced thousands to lend him. He stimulated their
> avidity by paying his ninety-day notes in full at the end of forty-five days, and by
> circulating the notice that he would pay any unmatured note presented in less than
> forty-five days at 100% of the loan. Within eight months he took in $9,582,000 for
> which he issued his notes for $14,374,000. He paid his agents a commission of 10
> per cent. With the 50 per cent. promised to lenders, every loan paid in full with the
> profit would cost him 60 per cent. He was always insolvent and became daily more
> so, the more his business succeeded. He made no investments of any kind, so that
> all the money he had at any time was solely the result of loans by his dupes.

*Cunningham v. Brown*, 265 U.S. 1, 7 (1924).

The term "Ponzi scheme" has come to be characterized as consisting of three essential

elements.  First, a "Ponzi scheme" involves either no actual investment vehicle or a very small

investment vehicle.  Second, the scheme must appear to generate income, inducing new investors

to join.  Third, the income paid to the early investors must be derived entirely, or at least

substantially, from payments made by later investors.  *In re Financial Federal Title & Trust*, 309

F.3d 1325, n. 2 at 1327 (11th Cir. 2002); *Eberhard v. Marcu*, 530 F.3d 122, n.7 at 132 (2d Cir.

2008) (investors in "Ponzi schemes" are generally not paid by an underlying business concern);

*United States v. 8 Gilcrease Lane, Quincy Florida 32351*, 587 F.Supp.2d 133, 141 (D.C. Cir.

**DEFENDANT'S PRETRIAL CONFERENCE STATEMENT: STATEMENT OF FACTS AND MOTIONS IN LIMINE**

2008); *United States v. Munoz*, 408 F.3d 222, n.1 at 22 (5th Cir. at 2005) (investors in "Ponzi schemes" are typically paid with money invested by later investors); *United States v. Orton*, 73 F.3d 331, n.2 at 332 (11th Cir. 1996) (investors in "Ponzi schemes" are convinced by the scheme that they are earning profits); see also Ponzi Schemes and the Law of Fraudulent and Preferential Transfers, American Bankruptcy Law Journal, Spring, 1998.

In the instant case, the prosecution has already defined the activities of MJE Invest, Dawnstar Alliance, and the Leopard Fund as "exemplifying a Ponzi scheme," and is intending on calling an "Investment Fraud Witness" to testify about "Ponzi schemes." Pretrial Conference Statement at 2 (Dkt. 63); United States' Witness List at 2. This characterization, however, is demonstrably false based upon the facts of this case, and the government's interpretation of these facts. Accordingly, by the government's own admission of the facts, the term "Ponzi scheme" is not supported by any reasonable inference of this case. This Court should therefore prohibit the prosecution from continuing the use of this false characterization in either the evidentiary or argument portions of trial.

While the defense does not agree with many of the facts and conclusions as stated in the government's "Pretrial Conference Statement: Brief Overview of the Case," even under this version of events, the prosecution admits several facts clearly indicating that the activities of MJE Invest, Dawnstar Alliance, and the Leopard Fund, were not operating a "Ponzi scheme." The prosecution states, for example, that the defendant's funds "consisted of two Ameritrade accounts that he used to trade on stock market indices, options, and exchange trade funds." Pretrial Conference Statement at 2. While the prosecution's characterization that Mr. Prince was the trader may be false, the prosecution nonetheless admittedly recognizes that the organizations utilized an investment vehicle, which is completely uncharacteristic of the commonly-accepted definition of a "Ponzi scheme." *In re Financial Federal Title & Trust*, 309 F.3d 1325, n. 2 at 1327.

The government does not allege that a substantial portion of the funds in the Ameritrade accounts were not used for trading purposes; in fact, the government alleges that a substantial portion of the funds *were* used for trading purposes.  The government can only specifically assert that $260,000 of the total $1.2 million loaned to the fund were used for non-trading purposes. Pretrial Conference Statement at 2.  The prosecution admits that a majority of the funds were, in fact, traded as part of the Ameritrade Accounts.  Pretrial Conference Statement at 2.  Accordingly, under the prosecution's own theory of the case— even though the defense contends the validity of several of its statements of facts and conclusions—  there is simply no factual basis to support its use of the term "Ponzi scheme."

Additionally, the use of the term "Ponzi scheme" would be unfairly prejudicial and inflammatory against the defendant.  Because of recently publicized "Ponzi schemes," the term has developed an inflammatory connotation, and the use of the term—  or comparisons to any well-known "Ponzi schemes"—  would merely be to "arouse the passions or prejudice of the jury." *United States v. Leon-Reyes*, 177 F.3d at 822.  Simple reference to the term, or drawing any comparison to famous "Ponzi schemes," like those involving Bernie Madoff, Allen Stanford, and Scott Rothstein, would be likely to confuse or mislead jurors to believe that the programs run by Mr. Prince were somehow comparable to those schemes, all of which involved organizations where returns to investors were generated solely out of payments made by later investors.  Such a comparison is simply not apt here.

Accordingly, this court should prohibit the term "Ponzi scheme" from being used by the prosecution in any aspect of the upcoming trial, including argument.  Even under the facts alleged by the prosecution, such a comparison is simply not applicable to the instant case.  Given the term's current usage, reference to the acts involved in this case as constituting a "Ponzi scheme" has almost no probative value; it is inflammatory and simply intended to arouse the jury's passions

**DEFENDANT'S PRETRIAL CONFERENCE STATEMENT: STATEMENT OF FACTS AND MOTIONS IN LIMINE**

and prejudice.  Similarly, reference to any high-profile "Ponzi schemes," including those involving Bernie Madoff, Allen Stanford, and Scott Rothstein, should similarly be prohibited.  This case should be decided on the facts as elicited at trial and not on any factually-unwarranted and emotional appeals made by the prosecution.

**X.      The defense moves to preclude any reference to any of the complaining witnesses as "victims" at any time during voir dire, opening statement, and direct or cross-examination of any witness.**

This motion is made on the grounds that the use of the term "victim" violates the presumption of innocence, amounts to the prosecutor's expressing a personal belief that the complaining witness is telling the truth and that the defendant is guilty, and invades the province of the jury.  (See, e.g., *People v. Williams,* 17 Cal. 142, 147 (1860); *Jackson v. State,* 600 A.2d 21, 24 (Del. 1991); *Veleto v. State,* 8 S.W.3d 805, 816-817 (Tex. App. 2000).)

**XI.     The defense requests that the prosecution turn over all discovery which has not yet been disclosed, including any discovery that is mandated to be disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).**

The defendant requests that the prosecution disclose any remaining discovery to which he is legally entitled.  To date, the United States Attorney has produced voluminous investigation reports, documentary evidence, copies of records, statement of witnesses, and statements of the defendant.  The Prosecution's First Amended Exhibit List (Dkt. 150) mentions unproduced documents.  This motion seeks the court to require the United States Attorney to represent to the court that the informal discovery provided fully satisfies the government's discovery obligations.

Defendant also seeks an order compelling the government to provide any remaining discovery of any statements of co-conspirators the government intends to introduce as evidence, any evidence that the government seeks to introduce pursuant to Rules 404(b), 608, and 609 of the Federal Rules of Evidence, and a specific factual statement disclosing all such evidence.

Finally, defendant seeks discovery of any potentially exculpatory evidence mandated to be

turned over pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). This request includes, but is not limited to, all evidence regarding the identity and location of any individual who acted as a trader for MJE Invest and/or Leopard Fund, including a person known as Billy Choi (aka Billy Zhao).

Dated: August 25, 2011                         Respectfully Submitted,

                                               NOLAN ARMSTRONG & BARTON LLP

                                                              /s/
                                               _____
                                               Daniel L. Barton,
                                               Attorney for Defendant David Prince

**DEFENDANT'S PRETRIAL CONFERENCE STATEMENT: STATEMENT OF FACTS AND MOTIONS IN LIMINE**