Daniel L. Barton (SBN 135806)
NOLAN, ARMSTRONG & BARTON, LLP
600 University Avenue
Palo Alto, California  94301
650/326-2980 – Telephone
650/326-9704 – Facsimile

Counsel for Defendant
DAVID PRINCE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>DAVID PRINCE,<br><br>　　　　Defendant | ) No. CR 10-00153 CRB<br>)<br>) **DEFENDANT'S NOTICE OF MOTION**<br>) **AND MOTION FOR A NEW TRIAL**<br>) **PURSUANT TO FEDERAL RULE OF**<br>) **CRIMINAL PROCEDURE 33**<br>)<br>) **Date:**　November 16, 2011<br>) **Time:**　2:15 P.M.<br>)<br>) |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that defendant David Prince, by and through his attorney, Daniel L. Barton, hereby moves the Court to grant defendant a new trial pursuant to Federal Rule of Criminal Procedure 33.

This motion is based on the instant Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the attachments, any pleadings, orders, or documents on file in this matter, and any additional evidence and argument as may be presented at the hearing on this motion.  This motion complies with the court's order that Defendant submit his motion for a new trial by October 21, 2011.

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

Following a jury trial, defendant David Prince was found guilty of five charges of wire fraud. The jury was unable to reach a verdict on two additional charges of wire fraud, and the Court declared a mistrial in relation to these charges.

Defendant brings the following motion for a new trial based on Federal Rule of Criminal Procedure 33. Defendant brings this motion on the following grounds: (1) Defense's Proposed Jury Instructions 4 and 11 relating to "Missing Witnesses" and "Guaranteed and Secured—Defined" (Dkt. 206) were improperly denied; (2) the Court erred by not requiring Dr. Lance Lee assert his Fifth Amendment privilege in front of the jury; and (3) the defense was improperly prohibited from cross-examining W. Carson McLean regarding the facts underlying his financial analysis and conclusions, particularly in relation to whether he was provided with and/or considered information provided to the case agent regarding cash payments made to the funds' trader, Billy Choi. These errors—taken either individually or collectively—warrant a new trial, and accordingly the Court should grant this motion.[1]

## 2. A MOTION FOR A NEW TRIAL SHOULD BE GRANTED IF THERE IS A REASONABLE PROBABILITY THAT AN ERROR RESULTED IN A MISCARRIAGE OF JUSTICE.

Motions for new trials are governed by Federal Rule of Criminal Procedure 33. Such motions can be made on a number of different grounds, including the discovery of new evidence, the denial of a defendant's constitutional rights, or any other error that resulted in injustice. *See* Fed. R. Crim. Pro. 33; *Harper v. United States*, 296 F.2d 612, 614 (9th Cir. 1962); *United States v.*

---

[1] The defense will order a transcript of W. Carson McLean's testimony and provide it to the Court and to the government as soon as it is received from the court reporter.

*Arango*, 670 F.Supp. 1558 (S.D. Fl. 1987) (motion for new trial can be based on deprivation of an individual's constitutional rights).

The party bringing the motion must show there is a reasonable probability that a miscarriage of justice resulted from an error. *Harper*, 296 F.2d at 614; *United States v. Smith*, 179 F.Supp. 684 (D.C. Cir. 1959). In order to meet this burden, the party must show that it is reasonably likely that the outcome of the trial would have been different absent the alleged error. *United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978); *see also United States v. Logan*, 861 F.2d 859 (5th Cir. 1988). The motion for a new trial should be granted if this burden is met.

**3. DEFENDANT'S PROPOSED JURY INSTRUCTIONS FOUR ("MISSING WITNESSES") AND ELEVEN ("GUARANTEED AND SECURED—DEFINED") WERE IMPROPERLY DENIED, AND THEIR DENIAL WARRANTS GRANTING A NEW TRIAL.**

The failure to give proper jury instructions can serve as an appropriate basis to grant a new trial. *See United States v. Marguet-Pillado*, 648 F.3d 1001, 1010 (9th Cir. 2011) (remanding for a new trial on that ground). In the instant case, two instructional errors warrant a new trial.

First, it was error to deny both of the defendant's proposed "Missing Witness" Instructions. One instruction should have been read to the jury in order properly to explain Dr. Lance Lee's failure to testify, and so that the jury could properly consider the import of this failure. *See United States v. Noah*, 475 F.2d 688, 691 (9th Cir. 1973). Given the defendant's good faith defense, it is reasonably likely that defendant's inability to call Dr. Lee as a witness, coupled with the Court's failure to give this instruction, affected the outcome of the trial.

Second, the denial of defendant's Proposed Jury Instruction 11 regarding the definitions of "Guaranteed" and "Secured" also constituted error. A court is obligated to instruct the jury on the definitions of ambiguous or technical terms. *See United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1571 (9th Cir. 1989). Because the primary misstatement alleged by the prosecution was Mr.

Prince's statement that each investor's principal was "guaranteed," the failure to instruct on the legal meaning of that word—as distinguished from the meaning of the term "secured" and from the colloquial meaning of the term—prejudiced the defendant. A new trial is warranted based on each of these errors.

### A. The denial of the defense's proposed "Missing Witness" instructions constituted prejudicial error.

The court improperly denied Defense's Proposed Jury Instructions 4-a and 4-b (Dkt. 206), which gave two alternative "Missing Witness" instructions.[2] These instructions were premised on

---

[2] Defense's Proposed Jury Instruction 4-a (Dkt. 206) reads:

> You have heard testimony about Dr. Loren Daniel Lee (also called Lance Lee). The government did not call Dr. Lee to testify. The defense attempted to call Dr. Lee to testify in this case, but Dr. Lee refused, stating under oath that his testimony might incriminate him. The government had the opportunity to grant immunity to Dr. Lee, but chose not to. Had the government granted Dr. Lee immunity, Dr. Lee could not have refused to testify. The defense does not have the ability to grant immunity, only the government does.
>
> The defense has argued that Dr. Lee could have given material testimony in this case and that the government was in the best position to produce this witness. If you find that Dr. Lee could have been called by the government and would have given important new testimony, and that the government was in the best position to call Dr. Lee, but failed to do so, you are permitted, but you are not required, to infer that the testimony of Dr. Lee would have been unfavorable to the government.
>
> In deciding whether to draw an inference that Dr. Lee would have testified unfavorably to the government, you may consider whether Dr. Lee's testimony would have merely repeated other testimony and evidence already before you.

Defense's Proposed Jury Instruction 4-b (Dkt. 206) reads:

> You have heard testimony about Dr. Loren Daniel Lee (also called Lance Lee). Dr. Lee was not called to testify. The defense has argued that Dr. Lee could have given material testimony in this case and that the government was in the best position to produce this witness.
>
> If you find that Dr. Lee could have been called by the government and would have given important new testimony, and that the government was in the best position to

4

the importance of clarifying for the jury why Dr. Lance Lee did not testify before the jury. Because the jury was likely to hold Mr. Prince responsible for not calling Dr. Lee to testify, and because only the government could have compelled Dr. Lee to testify before the jury, a "Missing Witness" instruction should have been given.  In particular, the Defense's Proposed Jury Instruction 4-a, which clearly outlined why Dr. Lee was not testifying, should have been read to the jury.

"The failure of a party to produce a material witness who could elucidate matters under investigation gives rise to a presumption that the testimony of that witness would be unfavorable to that party if the witness is peculiarly within the party's control." *United States v. Noah*, 475 F.2d 688, 691 (9th Cir. 1973) (citing *World Wide Automatic Archery, Inc. v. United States*, 356 F.2d 834, 837 (9th Cir. 1966)).  Ninth Circuit Model Criminal Jury Instruction 4.13 states that a "Missing Witness" instruction is warranted in certain cases.  If a witness is peculiarly within the power of one party to produce but that party fails to call the witness to testify, and if the inference of unfavorable testimony from the absent witness is a reasonable and natural one, a court should give a "Missing Witness" instruction.  *See United States v. Bramble*, 680 F.2d 590, 592 (9th Cir. 1982); *United States v. Noah*, 475 F.2d at 691.

Defendant identified Dr. Lee as a witness.  Before trial, defendant moved for a judicial grant of immunity for Dr. Lee, which was denied.  Defendant twice requested permission to call

---

> call Dr. Lee, but failed to do so, you are permitted, but you are not required, to infer that the testimony of Dr. Lee would have been unfavorable to the government.
>
> In deciding whether to draw an inference that Dr. Lee would have testified unfavorably to the government, you may consider whether Dr. Lee would have merely repeated other testimony and evidence already before you.

Dr. Lee to testify before the jury; that request was denied both before and during trial. As expected, Dr. Lee invoked his Fifth Amendment privilege and refused to testify. Defendant presented a defense of good faith, principally arguing that he relied on representations made by Dr. Lee. Mr. Prince's failure to call the one witness who could corroborate the central premise of his defense likely caused the jury to distrust Mr. Prince's testimony regarding the information Dr. Lee provided to Mr. Prince. The jury was never informed that defendant was unable to call Dr. Lee as a witness.

Dr. Lee was within the exclusive power of the government to produce. While a witness's unavailability due to his assertion of a Fifth Amendment right has been ruled by some courts to make a witness unavailable to both parties and therefore not within the peculiar power of the government, *see, e.g.*, *United States v. Brutzman*, 731 F.2d 1449 (9th Cir. 1984), *overruled on other grounds by United States v. Charmley*, 764 F.2d 675, 677 n. 1 (9th Cir. 1985), the government's ability to immunize witnesses—a power which the defense does not possess—clearly gave the government the exclusive power to call Dr. Lee. The government simply chose not to exercise this power.

Defense Proposed Jury Instruction 4-a explained clearly and accurately to the jury why Dr. Lee was unavailable: his assertion of his Fifth Amendment privilege. The proposed instruction would allow a jury to determine what weight to give this factor in analyzing defendant's failure to call Dr. Lee as a witness. Defense Proposed Jury Instruction 4-a fully and accurately explains why defendant did not call Dr. Lee to testify at trial, is fair to both parties, and should have been read to the jury. Alternatively, the jury should have been read Proposed Instruction 4-b: a shorter, more succinct instruction that also provides an accurate and fair explanation of defendant's failure to present the testimony of the one witness who could have supported his good faith defense.

An inference that Dr. Lee's testimony would have been unfavorable to the government is both reasonable and natural within the meaning of *United States v. Bramble*, 680 F.2d 590, 592 (9th Cir. 1982). The lack of testimony by Dr. Lee was an obvious deficiency in the defense evidence. The testimony of Christopher Hudson and the contemporaneous notes taken by Mr. Hudson during meetings with Dr. Lee indirectly corroborated Mr. Prince's testimony about what Dr. Lee told him about the funds' trader(s) and trading history. Because Mr. Prince's testimony about what he was told by Dr. Lee was consistent with Mr. Hudson's testimony about what he was told, it is reasonable and natural to assume: (1) that Dr. Lee's testimony would mirror their testimonies regarding statements and representations made by him, and (2) that such testimony would have been unfavorable to the government.

Mr. Prince was prejudiced by the court's failure to give one of his proposed missing witness instructions. In a typical case, it is important for a missing witness instruction to be given from the bench. This is because:

> arguments of counsel generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance for the jury as matters of argument, not evidence, and are likely viewed as the statements of advocates; the latter, [the Supreme Court has] often recognized are viewed as definitive and binding statements of law.

*Boyde v. California*, 494 U.S. 370, 384 (1990) (citation omitted). That said, reviewing courts occasionally will find that a defendant has not been prejudiced by the trial court's failure to provide a missing witness instruction where the defendant was able to argue to the jury about what inferences the jury might make. *See, e.g., United States v. Perez*, 299 F.3d 1, 4 (1st Cir. 2002).

Here, significantly more than in the typical case, arguments of counsel could not begin to substitute for an instruction from the bench. First, because the jury was not permitted to see Dr. Lee refuse to testify for Mr. Prince, or to learn the government refused to grant Dr. Lee immunity,

7

there was no evidence to support a defense argument that Dr. Lee was peculiarly within the power of the government. Second, the limited corroboration for Mr. Prince's testimony that Dr. Lee existed, was involved with the funds, and was the primary contact to the trader Billy Choi, would have led the jury to the incorrect conclusion that it was Mr. Prince who should have called Dr. Lee to testify. Thus, without a missing witness instruction, Dr. Lee appeared to be a missing defense witness, when in fact it was the defense position that the jury should have seen him as a missing government witness—a position that the defense could not argue to the jury, even though it was properly supported.

Additionally, in contrast to cases like *United States v. Kress*, 451 F.2d 576, 577 (9th Cir. 1971), Dr. Lee's testimony would not have been cumulative. He was in a unique position to testify regarding his personal knowledge of the traders, and to the information that Dr. Lee provided to Mr. Prince regarding the traders.

All that must be shown in a Motion for a New Trial is that absent the alleged error, it is reasonably likely that the outcome of the trial would have been different. Given the central importance of the good faith defense to this case, and the fact that Dr. Lee's absence was unexplained to the jury, the failure to give Instructions 4-a or 4-b meant that the jury was not aware how his absence could appropriately be considered. As it occurred at trial, it is reasonably likely that the jury held it against the defendant for not calling Dr. Lee to testify, even though the defense had no power to call Dr. Lee. Only the government had the power to make Dr. Lee available as a witness, and it decided as a tactical matter not to do so. The failure to give a missing witness instruction warrants granting a new trial.

**B. The denial of the defense's proposed "Guaranteed and Secured—Defined" instruction constituted prejudicial error.**

The denial of the Defense's Proposed Jury Instruction 11 regarding the definitions of "Guaranteed and Secured" also constituted prejudicial error that warrants granting a new trial.[3] A court should instruct the jury regarding the meaning of terms outside the common understanding of a juror, or terms that are so ambiguous or technical as to require a specific definition. *United States v. Young*, 458 F.3d 998, 1010 (9th Cir. 2006); *United States v. Hernandez-Escarsega*, 886 F.2d at 1571.

In the context of investment and loan programs, "secured" and "guaranteed" clearly qualify as technical words requiring definition by the court. "Secured loan," for example, has a specific legal definition in Black's Law Dictionary, which defines it as "[a] loan for which some form of property has been pledged or mortgaged." Black's Law Dictionary (5th Edition 1979) (emphasis added). On the other hand, where a loan or investment is merely "guaranteed," it is simply promised to be returned. *See* Oxford English Dictionary (2nd Edition 1989) (definition of

---

[3] Defense Proposed Jury Instruction 11 reads:

> You have heard testimony in this trial regarding a guarantee of principal. There has also been testimony regarding the concept of security or backing for a guarantee.
>
> If a loan or principal balance is guaranteed, it is promised to be returned.
>
> If a loan or principal balance is secured, an asset or a piece of property has been pledged or mortgaged as collateral if a borrower defaults on its obligation.
>
> Mr. Prince is charged with misrepresenting to witnesses that their loans or principal balances to MJE Invest, Dawnstar Alliance, or The Leopard Fund were guaranteed. In considering whether this statement was made, you should consider whether Mr. Prince represented to a witness that the loan or principal was secured or guaranteed.
>
> If you determine such a statement was made, you should then consider the differences in the meanings of these terms in deciding whether Mr. Prince made a misrepresentation that the witness's loan or principal was guaranteed.

guarantee). These two legal terms of art are clearly distinguishable from each other, and therefore Defense's Proposed Jury Instruction 11 would have allowed the jury to differentiate properly between the terms as they were used in this case. The meaning of these highly technical terms and the differences between them are not something within the jurors' common knowledge, and therefore an instruction as to their particular meanings was required.

The defendant's statement that investors' principal was guaranteed formed the primary basis of each of the seven charges of wire fraud in this case. Specifically, because the MJE Invest! and Leopard Fund contracts both expressly stated that the principal was guaranteed, and because each investor signed one of these contracts, the meaning of the term "guaranteed" was of critical importance to each of the charges. The guarantee of principal was also referenced and thoroughly discussed by both parties in opening statements and closing arguments. The fundamental importance of the meaning of this technical, contractual language to each of the seven charges makes it is reasonably probable that the Court's failure to define these terms properly affected the outcome of the trial. An instruction regarding this term was necessary to ensure that the jury did not believe that "guaranteed" was synonymous with "secured," and thus so that the jury would reach verdicts based on an accurate interpretation of the legal terminology contained in the written loan agreements. Accordingly, the denial of Defense's Proposed Jury Instruction 11 unfairly prejudiced the defendant, and the grant of a new trial is warranted.

### 4. THE FAILURE TO ALLOW DR. LEE TO TESTIFY BEFORE THE JURY WARRANTS GRANTING A NEW TRIAL.

Dr. Lance Lee testified outside of the presence of the jury and invoked his Fifth Amendment privilege in response to each of the questions posed to him by defense counsel. The defense requested that Dr. Lee assert his privilege in front of the jury, but the Court ruled that Dr. Lee could not be called to testify before the jury. The Court's failure to allow the defense to call

Dr. Lee to testify and to invoke his Fifth Amendment privilege before the jury constitutes prejudicial error warranting a new trial.

The Ninth Circuit has ruled that, as a general matter, a non-party witness cannot be called to testify solely for the purpose of having the witness claim his Fifth Amendment privilege before the jury. *See, e.g., United States v. Licavoli*, 604 F.2d 613, 624 (9th Cir. 1979). However, the reasoning employed in other Ninth Circuit decisions is more applicable given the facts of this case. *See, e.g., United States v. Seifert*, 648 F.2d 557, 560-561 (9th Cir. 1980) (citing *United States v. Gay*, 567 F.2d 916, 920 (9th Cir. 1978)).

In *United States v. Seifert*, 648 F.2d 557 (9th Cir. 1980), the non-party witness invoked his Fifth Amendment privilege as to a specific question. The Ninth Circuit held that because the witness's invocation would have been "a form of impeachment," the trial court "should have allowed counsel to put the question to [the witness] before the jury," thereby forcing the witness to invoke his privilege before the jury. *Id*. at 560-561.

While Dr. Lee's invocation of his Fifth Amendment privilege before the jury would not necessarily be relevant for impeachment purposes, it would be relevant for two other reasons that bring this case outside the control of the *Licavoli* line of cases. First, calling Dr. Lee to testify before the jury would confirm the existence of Dr. Lee, thereby corroborating, at least in that limited respect, Mr. Prince's testimony that all his information regarding the trader(s) and the trading history was provided to him by Dr. Lee. Second, the failure of the Court to permit Mr. Prince to call Dr. Lee to testify before the jury meant that Mr. Prince was unable to argue that Dr. Lee's failure to testify was due to Dr. Lee's invocation of his Fifth Amendment privilege.[4] The

---

[4] In *Licavoli*, the Ninth Circuit rejected the appellant's argument that he should have been permitted to call witnesses—and in particular members of the victim's family—who would provide no testimony in order to show that "he was not reluctant to confront those persons."

lack of evidence or argument explaining Dr. Lee's absence, in combination with the Court's erroneous refusal to provide one of the requested missing witness instructions, permitted the jury unfairly to hold Mr. Prince responsible for failing to call Dr. Lee to the stand to corroborate his testimony.

Like in *Seifert*, the invocation of Dr. Lee's Fifth Amendment privilege in the presence of the jury would have had a specific, permissible purpose given the facts of the case.[5] The jury was specifically informed that it could consider "lack of evidence" during deliberation. *See* Ninth Circuit Model Criminal Jury Instructions 3.5 (Reasonable Doubt—Defined). Without the appearance of Dr. Lee at trial, the jury was faced with a lack of evidence that it was likely to hold against the defendant unfairly: Given the defendant's good-faith defense, the existence of Dr. Lee, and the likelihood that Dr. Lee would have corroborated Mr. Prince's testimony, Dr. Lee's unexplained absence was highly and unfairly prejudicial to the defendant, who, unbeknownst to the jury, had no ability to call him to testify. Accordingly, the failure to have Dr. Lee appear before the jury—and invoke his Fifth Amendment privilege in front of it—was reasonably likely to have affected the outcome of the trial, and therefore warrants a new trial.

---

*United States v. Licavoli*, 604 F.2d at 624. Here, Mr. Prince was not arguing for permission to confront his accuser. Rather Mr. Prince wanted to elicit specific, affirmatively favorable testimony from an associate of his, Dr. Lee.

[5] While the witness in *Seifert* only invoked his privilege as to a single question, and Dr. Lee presumably would have issued a blanket invocation as to all questions, this distinction does not undermine the application of *Seifert* to the instant case. It does not matter how many questions a witness refuses to testify, as long as the witness's refusal to answer one or more questions is something that can be properly considered by the jury. In this case, the jury could properly have considered Dr. Lee's existence and Mr. Prince's inability (and, conversely, the government's ability) to call Dr. Lee to testify, when evaluating Mr. Prince's good faith defense.

**5. THE DENIAL OF DEFENSE COUNSEL'S RIGHT TO CROSS-EXAMINE W. CARSON MCLEAN REGARDING THE FACTS UNDERLYING HIS ANALYSIS, PARTICULARLY REGARDING CASH PAYMENTS TO BILLY CHOI, WARRANTS A NEW TRIAL.**

W. Carson McLean testified for the government as an expert witness. His testimony consisted of a financial analysis of bank and brokerage accounts relating to Leopard Fund, MJE Invest!, and Dawnstar Alliance. Mr. McLean was the only expert who testified at trial. On cross-examination, defense counsel was prohibited from asking Mr. McLean about the factual basis of his testimony. Specifically, the defense attempted to question him about whether he was informed that the case agent had obtained information from Billy Choi that defendant made cash payments to Mr. Choi to compensate him for his work trading the Ameritrade account. And the defense attempted to question him about whether he included evidence of these cash payments to Mr. Choi in his calculations of what money was put to business-related purposes and what money was put to personal use. This restriction on defendant's cross-examination of a prosecution expert constituted prejudicial error.

A defendant has the constitutional right to cross-examine witnesses against him, as well as specific permission under Federal Rule of Evidence 702 and 705 to cross-examine an expert regarding the facts serving as the basis for his conclusions. U.S. Const. amend VI; *Howard v. Walker*, 406 F.2d 114, 128 (2d Cir. 2005) ("Court-imposed limitations on cross-examination can…violate a defendant's Confrontation Clause rights."); *Davis v. Alaska*, 415 U.S. 308, 318 (1974) (holding that a criminal defendant is "denied the right to effective cross-examination" if he is not "permitted to expose the jury to the facts from which the jurors, as the triers of fact and credibility, could appropriately draw references relating to the reliability of the witness").

An expert may testify regarding specialized knowledge only if the testimony is based on sufficient facts or data. Fed. R. Evid. 702. On cross-examination, the expert is required to

disclose the underlying facts or data. Fed. R. Evid. 705. Accordingly, a defendant is entitled to cross-examine an expert witness regarding the underlying facts or bases of the expert's conclusions. Fed. R. Evid. 702, 705. *See also United States v. A & S Council Oil Company*, 947 F.2d 1128, 1135 (4th Cir. 1991) ("Full examination of the underpinnings of an expert's opinions is permitted because the expert, like all witnesses, puts his credibility in issue by taking the stand.") As part of his full examination rights, a defendant is entitled to question the expert about what evidence was available to the expert that he did not consider in forming his opinions, or about what evidence was available to the government but not provided to the expert that the government called to testify.

Mr. Prince attempted to cross-examine Mr. McLean about the factual basis of his calculations in order to reveal flaws in those calculations. Mr. McLean testified and produced charts regarding the amount of cash in the accounts that went to personal uses (or unaccounted for uses) by the defendant. *See* Trial Exhibits 202, 205, and 206. Mr. Prince attempted to determine whether Mr. McLean had been informed of—and included in his calculations—cash payments made to the funds' trader Billy Choi. Such payments would have constituted legitimate business expenses, as opposed to personal uses of the funds. Therefore, the defense asked Mr. McLean whether he had been informed of the cash payments, and if so whether he had included them in his calculations.

The questions regarding cash payments made to Billy Choi were asked in good faith. The FBI interviewed Billy Choi (AKA Billy Zhao). Billy Choi told the FBI that he "received approximately 25% of the profits" of his trading, and that Dr. Lee paid him "in cash for some of his earnings." *See* Attachment A (FBI Report of Telephonic Interview with Billy Zhao). Billy Choi also acknowledged that he was associated with Kenan Ren, who received a large wire

transfer from defendant's bank account. Mr. Prince was denied his constitutional and statutory right to examine Mr. McLean about the factual basis of his expert testimony. Because the defense was not allowed to ask Mr. McLean about these business expenses, the jury was left to assess the accuracy of Mr. McLean's conclusions without necessary information about the completeness of his data. Mr. McLean was the only financial expert in this case, and this error reasonably likely affected the outcome of the trial.

The use of the funds was of critical importance in this trial. The government argued that Mr. Prince committed fraud by using investor money for his own benefit rather than using it for legitimate business purposes. Mr. McLean's testimony constituted the bulk of the government's financial evidence. The existence of large cash payments used to pay legitimate business expenses would have rebutted the allegation that Mr. Prince used the funds for his own personal benefit. Full cross-examination regarding the accuracy of Mr. McCleans calculations was necessary for the jury to be able to determine what weight to give the conclusions and testimony of Mr. McLean. If Mr. Prince had been permitted to ask questions to undermine Mr. McLean's calculations, the result of the trial would likely have been different, as the jury would have had strong reasons to doubt the evenhandedness of the expert witness and the reliability of his opinions. Accordingly, this error requires a new trial.

**6. CONCLUSION**

Several prejudicial errors at Mr. Prince's trial demand that he be granted a new trial. These errors include the failure to properly instruct the jury, the failure to have Dr. Lee appear and invoke his Fifth Amendment privilege before the jury, and the failure to allow a full cross-examination of the underlying facts supporting the Mr. McLean's financial conclusions. While

each of these errors individually is enough to warrant a new trial, the collective effect of each of these errors clearly supports the granting of this motion.

Dated: October 21, 2011                    Respectfully Submitted,

                                           NOLAN ARMSTRONG & BARTON, LLP


                                                         /s/
                                           _____

                                           Daniel L. Barton,
                                           Attorney for Defendant David Prince