MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

JOSEPH FAZIOLI (CABN 275564)
ALLISON MARSTON DANNER (CABN 195046)
Assistant United States Attorneys

150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5595
Facsimile: (408) 535-5066
joseph.fazioli@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | No. CR 10-00153 CRB |
|---|---|---|
| Plaintiff, | ) | UNITED STATES' SENTENCING MEMORANDUM |
| v. | ) | |
| DAVID BOYER PRINCE, | ) | SENTENCING DATE: February 8, 2012 |
| Defendant. | ) | |

On October 5, 2011, after a three-week trial, a jury convicted defendant David Boyer Prince of five counts of wire fraud, in violation of 18 U.S.C. § 1343.[1] (CR 241). Evidence at trial showed that David Prince ran a scheme in which he appealed to individuals all over the country to invest with him on the promises that their principal would be "guaranteed" and that they would receive high rates of interest. David Prince claimed that the investors' money would be placed "in trade" according to a secret algorithm. In some instances, David Prince assured investors that they could trust him because he was an attorney.

Those investors' trust in David Prince was misplaced. In fact, there was no group of

---

[1] The jury did not reach a verdict on two other wire fraud counts submitted to the jury.

sophisticated traders, there was no infallible trading algorithm, and the investors' money that was not used to pay off earlier investors or to pay David Price himself was invested in the riskiest kind of stock options.  Ultimately, most of the investors' money was lost–in many cases with devastating results for the victims.

At trial, David Prince denied his guilt and maintained that he acted in good faith on representations made to him by others and that he did not intend to deceive the investors.  The jury rejected this argument.  David Prince's conduct before, during, and after the Leopard Fund demonstrates a pattern of deliberate deception.  An attorney from Saratoga, California, he took advantage of people who were not financially sophisticated and who trusted his extravagant promises.  As detailed in the victim impact statements submitted to the Court, David Prince's lies ultimately visited significant suffering on his victims, some of whom lost their homes, their children's college education money, and their chance of retirement.  David Prince's case has no significant mitigating factors.  As set forth further below, the United States respectfully requests that this Court sentence David Prince to a mid-range guidelines sentence of 96 months imprisonment.

## RELEVANT FACTS

The evidence submitted at trial demonstrated the following facts:

David Prince ran an investment fund called "The Leopard Fund."  The Leopard Fund entered into written agreements with individuals who agreed to provide money to the Leopard Fund, described in the agreements as "loans."  In exchange for the investors' money, the Leopard Fund promised in writing that "lender's principal shall be guaranteed and shall be returned to Lender at the termination of this loan agreement.  Lender shall be paid up to 5% per month interest depending on the success of any trades. . . . Lender may terminate this business loan agreement at any time by providing written notice . . . All funds requested for return shall be returned to Lender at the earliest reasonable time with consideration for any existing trades. . . . Once funds are entered into trade, any request to withdraw principal may take up to 30 days to process."  (Trial Exhibit 4, Leopard Fund Agreement of Bob Bolander, April 26, 2006).

David Prince did not fully disclose to investors how he would guarantee their principal,

2

even as he promised every investor that his or her principal was guaranteed. In fact, financial analysis of the various bank and trading accounts controlled by David Prince for the Leopard Fund revealed that, after March 2006, the Leopard Fund did not have enough assets to repay investors' principal–let alone to make the interest payments promised to investors. (*See* Trial Exhibit 202, attached hereto as Exhibit A).

Much earlier than March 2006, however, David Prince acknowledged to his employee Matthew Ellsworth that the Leopard Fund promises could not withstand scrutiny. In an October 17, 2005, email, David Prince wrote to Matthew Ellsworth giving him permission to pitch the Leopard Fund to another investment group. (*See* Trial Exhibit 195, attached hereto as Exhibit B). David Prince expressed doubt that the group would be interested–"I doubt anyone in his group is going to go for a 5% program. Our only advantage on such a low %/month program is that we are onshore and legal and we say principal guaranteed–but once the guarantee is probed we look kind of silly saying that." *Id.*

David Prince never disclosed to investors that he was using some of their money to pay off earlier investors. Many of the victims who testified at trial testified that they would never have invested in the Leopard Fund had David Prince disclosed this fact to them. As early as September 2005, David Prince instructed Matthew Ellsworth to "hold any funds from Daubner for the moment if they arrive. We will probably utilize a portion of it (like 50K) to distribute profits/pay off small investors etc." (Trial Exhibit 151). On November 16, 2005, Matthew Ellsworth wrote back, "I had a feeling that you wanted to use new funds to pay out the old lenders, I just thought we had decided that we weren't going to do that ALL the time." (Trial Exhibit 159).

Financial analysis presented at trial showed that–for some investors–all of the money they sent to David Prince went to pay off earlier investors. This was the case, for example, for victim The Minh Huynh. Although Mr. Huynh's money was never put to trade and solely went to pay earlier investors, on May 6, 2006, the Leopard Fund sent Mr. Huynh an email falsely stating that "We have your funds in the trade account." (Trial Exhibit 183). In fact, by that time, Mr. Huynh's money was already being used to pay off earlier investors.

When investors became suspicious about David Prince's promises, he initially paid them off.  In his own testimony at trial, Prince acknowledged that one of the reasons he decided to repay an investor in December of 2005 who threatened to go to the Securities and Exchange Commission was because of her threat to contact law enforcement.  Once the Leopard Fund began to lose significant amounts of money in January of 2006, David Prince did not tell investors of the losses, even as he could no longer afford to repay them to allay their suspicions.

By May of 2006, almost all of the money invested in the Leopard Fund had been lost–never to be recovered.  However, on May 15, 2006, David Prince sent an email to all investors stating that "[d]ue to the ongoing success of this program and our mutual desires to advance toward our financial objectives, we, the management, have made the policy decision to increase our minimum loan value to $50,000 beginning July 1, 2006."  (Trial Exhibit 57).  In August of 2006, at which time the Leopard Fund had less than $50,000, David Prince sent an email to investors stating that no trades had been made because "of a number of technical reasons."  He added, "An exhaustive analysis is beyond the scope of this update, however, suffice it to say that the markets are simply too unstable at this moment given the various geo-political and economic forces at play . . ."  (Trial Exhibit 196).  Nowhere in the email did David Prince disclose that he had lost all of the investors' money, and that this was the real reason that no trades were occurring.

Despite the promise that he would repay all investments when requested within 30 days, David Prince was evasive when individuals asked for their money back.  Robert Perini requested in writing several times that he get his money back.  On December 6, 2006, Mr. Perini wrote an email to David Prince stating "my records show a total of $25,232 on account with Leopard Fund.  Please confirm this amount and let me know when I can expect to receive a withdrawal check.  Thanks."  David Prince replied later that day in an email that stated only "[t]his amount is correct."  (Trial Exhibit 23).  Again, David Prince did not tell Mr. Perini the truth that all of the money had been lost.

In fact, David Prince continued to try and solicit the same investors for new investments. In 2007, David Prince sent a solicitation to a number of Leopard Fund investors, including

4

1  Bobby Joe Williams, an investor living in Texas, to invest in an "oil recovery project" in Texas.
2  (Trial Exhibit 90). The pitch made by David Prince in these follow-on schemes sounds a
3  familiar theme. The investment documents state that "the project requests a commercial loan in
4  the amount of $300M, with principal and interest backed 100% by all assets and net revenues."
5  *Id.* David Prince sent out these documents, nothwithstanding his May 16, 2006, promise to the
6  Texas State Securities Board (TSSB) not to offer for sale any unregistered security in Texas
7  (Trial Exhibit 175) and notwithstanding the fact that David Prince failed to inform the Texas
8  State Securities Board that he had any investors living in Texas.
9        In fact, the evidence at trial showed that David Prince made several false statements to
10 the Texas State Securities Board during its investigation. For example, Travis Iles–the principal
11 TSSB investigator working on the Leopard Fund investigation–testified that, on June 6, 2006,
12 David Prince told him that he had removed the "principal guaranteed" language from the
13 Leopard Fund agreements. However, Jack Sullivan, an investor in the Leopard Fund, testified
14 that he signed a Leopard Fund agreement on June 8, 2006, that included the principal guaranteed
15 language. David Prince also told Travis Iles in May of 2006 that the Leopard Fund had
16 consistently made 4.75% profits for the previous 8 months and that he had trading records to
17 back up this claim. However, the Ameritrade records that David Prince acknowledged he
18 received on a monthly basis in fact showed losses in January, February, and March of 2006.
19       David Prince's emails reveal his disdain for the individuals who invested with him–many
20 of whom had little financial sophistication. For example, on November 16, 2005, Matthew
21 Ellsworth wrote David Prince an email stating "I forgot to ask you, when do you want to move
22 7,000 from the brokerage account to boa–mje sales–so I can refund people's money? Some
23 people have sent in second and third emails asking when it will happen, so I would like to get it
24 done with sooner rather than later." (Trial Exhibit 158). David Prince replied, "Why the hell do
25 you think I've been stressing so hard about getting Burt, the New Zealand twit, or any other fool
26 to put some funds in this last week." *Id.*
27       David Prince relied on his legal credentials throughout the history of the Leopard Fund.
28 On August 11, 2005, David Prince wrote an email to Matthew Ellsworth stating "[a]ttached is a

very workable, final draft of the T&C Agreement. As attorney on this project I officially approve it." (Trial Exhibit 143). On January 11, 2006, David Prince wrote Matthew Ellsworth another email stating "although there may be a presumption that leopard fund is agreeing to all terms and conditions on the agreement once signed by the lender, I have not in fact signed virtually any of the agreements–and absent my signature–there arguably is truly NO obligation on our part to do anything other than return principal . . . wow)." (Trial Exhibit 169). Travis Iles testified that David Prince told him that he was the attorney for the Leopard Fund. Susan Ross testified that David Prince told her that he could not repay her principal "for legal reasons" because he would then have to repay all of the other investors when, in fact, David Prince selectively paid back some investors. David Prince signed the "Form D" with the SEC for the Leopard Fund as "David B. Prince, Esq." (Trial Exhibit 317). In an email that was produced in discovery but was not introduced at trial, David Prince sent to Matthew Ellsworth the text of answers to a variety of questions about the Leopard Fund. (*See* Email from David Prince to Matthew Ellsworth, DP 5848 2425-2427, attached hereto as Exhibit C). In response to a question about why the Leopard Fund is incorporated in Nevada, David Prince wrote "[o]ur corporate structure was established for well known corporate legal advantages such as asset protection and tax advantages." Several of the victim-investors at trial noted that David Prince's status as a lawyer helped persuade them to invest in the Leopard Fund.

The financial and emotional impact of David Prince's crimes on his victims has been devastating. PSR ¶ 13. The victim impact statements submitted by victims relate the following, for example:

- Victim CB, a hairdresser originally from Romania, lost her house after defendant defrauded her of $40,000 she had told him she could not afford to lose. CB invested after defendant gave her "his word" that she could not lose money. CB states that "[t]he sad part is that David doesn't have a clue how much he affected and changed our lives."

- Victim TMH, an auto mechanic, lost $25,000. TMH testified at trial that losing $25,000 with David Prince was one of the worst mistakes of his life.

- Victim SS, a Christian pastor in San Antonio, lost nearly $50,000 in what he had told defendant were college funds for his children. SS has suffered from anxiety, gained 40 pounds through stress, and feels that "a wedge of mistrust has entered" his marriage. SS stated that "I think that [defendant] should be punished to the

6

    max. allowed by the law. The toll taken on my family was and [is] huge and I know we are just a small part of it. I saw no sorrow in him and can't imagine how a person can be so thoughtless and callous to people."

- Victim AB and his wife were forced to go back to work as janitors in their 60s and now live in a 700 square foot residence.

- Victim GH was forced to declare bankruptcy and go back to work at age 69. GH feels constant stress from the fact that he lost his family's money.

- Victim JM's stated that as a result of being defrauded his three children "couldn't go on higher education, because of it. I had to work hard for my money, as I didn't have a good education. My parents were farmers and things were tough in the late Thirties, so I couldn't go to school, which I was hoping to help our children."

- Numerous victims report feeling anger, anxiety, fear, guilty, sleep loss, loss of concentration at work and home, as well as depression.

At trial and in his sentencing memorandum, David Prince continues to deny his responsibility for the lies he told to investors. In essence, David Prince blames all of the conduct described above on Lance Lee. However, the evidence at trial showed that none of the victims who testified at trial spoke to Lance Lee, that Lance Lee's name appeared on none of the Leopard Fund contracts, bank accounts, or brokerage accounts, and that most of the victims had never heard of Lance Lee. David Prince signed all of the Leopard Fund Agreements. David Prince admitted that the Ameritrade accounts were in his name and that he received and reviewed the brokerage statements. David Prince admitted that he personally met the trader and spoke with him. Nonetheless, David Prince continues to deny his responsibility for the crimes of which the jury found him guilty.

The lies that David Prince told to investors in the Leopard Fund are part of a broader pattern of dishonesty. Although the jury did not hear evidence of prior misconduct other than the TSSB evidence, pre-trial filings submitted by the government demonstrated the following about David Prince:

On February 1, 2005, Placer County Superior Court Judge Joseph O'Flaherty entered an order against defendant granting a motion for sanctions in the amount of $7,000 and finding that defendant made a representation to the court that was "intentionally misleading" and that "Mr. Prince advocated the existence of facts to [the] court without a reasonable basis for doing so."

7

Defendant subsequently failed to pay this sanctions order.

On July 30, 2006, U.S. District Court Judge Ronald M. Whyte granted a sanctions motion against defendant in the amount of $4,875. Defendant subsequently failed to pay this sanctions order. In part as a result of defendant's failure to pay both sanctions orders, defendant was placed on two years' probation by the California State Bar on or about April 23, 2007.

On or about August 9, 2006, defendant submitted a financial declaration in support of a motion for an extension of time to pay these disciplinary costs to the California Bar. This financial declaration, submitted under penalty of perjury, failed to disclose that defendant had received income from the Leopard Fund in the past 90 days. The financial records clearly demonstrate that David Prince paid himself from Leopard Fund investors' money between May 2006 and August 2006. On the declaration, defendant also failed to list any of the Ameritrade accounts associated with the Leopard Fund, despite having described the David B. Prince Ameritrade account as a personal asset on December 17, 2005 in his lease application for the Mercedes from Smythe European.[2] (Trial Exhibit 211).

As previously described in the United States' Motion to Admit Evidence of Attorney Misconduct (CR 159), defendant filed in a probate case a will that he later admitted contained a clause that he had inserted without the decedent's consent. In a declaration entered into under penalty of perjury on March 26, 1999 in Case No. 1-99-PR-1444838, *Shirley Thomas as Administrator of the Estate of William Joseph Soria*, defendant admitted that "I was the attorney who drafted the Revocable Living Trust for the Estate of William Soria," *id.* at ¶ 1, and that "[t]he Designation of the Charity on the Trust was inadvertently misstated as Children's Advocate which did not accurately reflect the Grantor's charitable intent." *Id.* at ¶ 2.

### DISCUSSION

The Probation Department's calculation of David Prince's Guidelines results in an adjusted total offense level of 29 and Criminal History Category I. (PSR ¶¶ 34, 44). The sentencing range for imprisonment under this Guidelines calculation is 87 to 108 months. The

---

[2] The Mercedes is listed as his car on the declaration.

Probation Department recommends that the Court downwardly depart to a prison term of 72 months along with other enumerated conditions. The defense recommends that David Prince receive a sentence of 24 months imprisonment. (Defendant's Sentencing Memorandum, CR 259). The United States has reviewed the final pre-sentence report (PSR) and has no objection to the either the guidelines calculation or the factual information contained in the PSR. For reasons stated below, the United States recommends that David Prince receive a mid-range Guidelines prison term of 96 months along with the other conditions enumerated by the Probation Department.

**A.     The Defendant's Applicable Guideline Range**

For the reasons stated below, the United States agrees with the Probation Department's calculation of David Prince's Guidelines.

(1)     Base Offense Level/Loss Amount

The United States agrees with the Probation Department and the defense that David Prince's base offense is seven and that he should receive a 14 level enhancement due to the victim's loss amount. (PSR ¶¶ 27, 28, Defendant's Sentencing Memorandum at 4-5). Although it does not affect the Guidelines calculation, David Prince should not receive credit for money he repaid investors after the scheme was discovered. The Ninth Circuit has found that an investment fraud scheme is "discovered" within the meaning of U.S.S.G. § 2B1.1 when a victim asks for his or her money back where the defendant promised investors a 100% return on their investments. *United States v. Garro,* 517 F.3d 1163, 1168 (9th Cir. 2008).

(2)     Ten or More Victims

The United States agrees with the Probation Department and the defense that David Prince's offense involved ten or more victims and that a two-level increase is warranted pursuant to U.S.S.G. § 2B1.1(b)(2)(A). (PSR ¶¶ 27, 28).

(3)     Violation of Prior Administrative Order

The United States agrees with the Probation Department and the defense that David Prince should receive a two-level enhancement for violating a prior, specific judicial or administrative order pursuant to U.S.S.G. § 2B1.1(b)(2)(B)(9)(C). (PSR ¶ 29). As described

9

above, David Prince lied to the TSSB during its investigation and sent Bobby Joe Williams a solicitation to invest in an oil recovery scheme long after Prince voluntarily agreed to abide by the Cease and Desist Order.

    (4)    <u>Sophisticated Means</u>

The United States agrees with the Probation Department that David Prince should receive a two-level enhancement for using sophisticated means pursuant to U.S.S.G. § 2B1.1(b)(2)(B)(10)(C). (PSR ¶ 29). The defense disputes this enhancement. (Defendant's Sentencing Memorandum at 6-7).

The United States concurs with the Probation Department's position that the "sophisticated means" enhancement is justified because, among other reasons, David Prince "utilized numerous bank and brokerage accounts to control the funds that were received and disbursed during the offense." (PSR ¶ 30; *see also* PSR ¶ 12 - listing additional facts supporting sophisticated means enhancement).

The Application Notes to U.S.S.G. § 2B1.1(b)(2)(B)(10)(C) also contemplate two distinct additional reasons why this enhancement is justified. First, David Prince located the main office of his investment fraud scheme in one location (Saratoga, California) while incorporating his business in another location (Nevada). *See e.g,*. Application Note 8 to 2011 Guidelines Manual U.S.S.G. § 2B1.1(b)(2)(B)(10)(C).

Furthermore, the Application Notes states that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicate sophisticated means." *See id.* Here, evidence at trial demonstrated David Prince (1) made false statements regarding which financial entities victims were investing in, and also (2) arranged for substantial amounts of investors funds to be wired in cash to offshore financial accounts.

    (5)    <u>Abuse of Position of Private Trust/Use of Special Skills</u>

The United States agrees with the Probation Department that David Prince should receive a two level enhancement for abuse of a position of private trust pursuant to U.S.S.G. § 3B1.3. (PSR ¶ 32). The defense disputes this enhancement. (Defendant's Sentencing Memorandum at

7-9). The Probation Department correctly notes that David Prince abused a position of trust as an attorney. (PSR ¶ 32).

Furthermore, the two-level sentencing enhancement pursuant to U.S.S.G. § 3B1.3 should also apply on the alternative grounds that David Prince "used a special skill in a manner that significantly facilitate the commission or concealment of the offense." The Application Note to U.S.S.G. § 3B1.3 specifically contemplates that a lawyer who uses his special skill as an attorney to facilitate his crime is subject to this enhancement. As summarized above, David Prince used his legal credentials to facilitate his fraud. Furthermore, victims testified at trial that David Prince recruited them to investment fraud scheme by (1) highlighting his status/special skill as an attorney; (2) assuring them that he could be trusted as an attorney; and (3) representing that his funds were in compliance with the law.

(6) No Credit for Acceptance of Responsibility

Finally, the United States agrees with the Probation Department that David Prince should receive no credit for acceptance of responsibility. (PSR ¶ 35). David Prince is unrepentant, and to this day fails to admit that he ever acted with an intent to defraud. Rather, his position as summarized by the Probation Department appears to be that "the statements *alleged* to be misrepresentations...were made in good faith as he believed them to be true." (PSR ¶ 17-22) (emphasis added).

It is the defendant's burden to demonstrate acceptance of responsibility. *United States v. Lopez-Patino,* 391 F.3d 1034, 1038 (9th Cir. 2004). "When a defendant chooses to put the government to its burden of proof at trial, a downward adjustment for acceptance of responsibility should be 'rare.'" *United States v. Weiland,* 420 F.3d 1062, 1080 (9th Cir. 2005). Here, David Prince has in no way accepted responsibility. Instead, he continued to deny the central element of wire fraud, which is the intent to defraud. Prince's argument is *not* like the duress defense examined in *United States v. Gamboa-Cardenas,* 508 F.3d 491 (9th Cir. 2007) upon which the defense relies. Prince does not admit that he committed the crime but that someone else forced him to do it; instead, he continues to deny that he committed a crime at all.

11

David Prince is also not entitled to credit for acceptance of responsibility in light of the fact that he arguably lied on the stand at trial in an attempt to deflect blame. Although the United States is not seeking a two-level enhancement for obstruction of justice, David Prince's lack of forthrightness at trial should militate against any credit for acceptance.

**B.   A Mid-Range Guidelines Sentence of 96 Months Imprisonment for David Prince is Reasonable and Appropriate under 18 U.S.C. § 3553**

A 96 month sentence for David Prince would comply with the purposes set forth in 18 U.S.C. § 3553(a)(2), as required by 18 U.S.C. § 3553(a). Although the Probation Officer recommends that this Court depart downward from the applicable Guidelines range, the Probation Officer does not identify the mitigating factors that would warrant such a deviation. In his own sentencing memorandum, David Prince emphasizes his parents' divorce as a mitigating factor. Weighed against the severe harm experienced by David Prince's victims and compared to the extremely difficult background of most criminal defendants in federal court, this factor should not be considered mitigating to warrant a departure from the Guidelines. Moreover, unlike many white collar defendants, David Prince does have a criminal history, having been convicted of assault with a deadly weapon, vehicle theft, and trespass. (PSR ¶¶ 41-43).

Moreover, a mid-level Guidelines sentence accords with the objectives of sentencing set out in 18 U.S.C. § 3553(a). First, a sentence of 96 months imprisonment would reflect the seriousness of David Prince's offense, wire fraud, promote respect for the law, and provide just punishment for this offense. *See* 18 U.S.C. § 3553(a)(2)(A). David Prince stole over $850,000 from over 25 victims. His criminal activities were not an one-time mistake, but rather a pattern of criminal conduct which took place "[f]rom approximately 2005 through January 2007." (PSR ¶ 6). A substantial custodial sentence - 96 months - is an appropriate sanction in this case for David Prince given: (1) the seriousness of his offense; (2) the substantial amount that he stole; and (3) the lengthy period of time which he engaged in investment fraud.

The requirement under § 3553(a)(2)(A) that this Court impose a sentence that will "promote respect for the law" is an aggravating factor in this case. David Prince has manifested his profound lack of respect for the law in two distinct but important ways. First, David Prince's

extensive criminal acts demonstrates a fundamental disrespect for the law, particularly given his status as an attorney and officer of the Court. Furthermore, as described above, David Prince has engaged in a pattern of dishonesty.

Finally, a 96 month sentence for David Prince would serve as a "just punishment" under § 3553(a)(2)(A). Such a disposition would be proportional with similar Guidelines sentences that this Court and other Judges have been imposed in analogous Northern District of California cases involving investment fraud and/or an attorney who had engaged in fraud. *See e.g. United States v. Morgen*, CR 08-00845 CRB (this Court imposed a 188 month Guidelines sentence after guilty plea in $9 million investment fraud case); *United States v. Nikolai Tehin*, CR 03-00236 SI (previously VRW) (Judge Walker imposed 170 month sentence after attorney defendant convicted at trial of defrauding clients of over $1.1 million); *United States v. Gary Bassett*, CR 08-00865 JW (63 months Guidelines sentence after guilty plea in $850,000 investment fraud case); *United States v. Trabulse*, 09-00350 WHA (97 month Guidelines sentence after guilty plea in $8.3 million investment fraud case); *United States v. Heckscher*, CR 09-00998 SI (240 months Guidelines sentence after guilty plea in $50 million investment fraud scheme); *United States v. Nicole Song*, CR 09-01214 JSW (84 month Guidelines sentence after guilty plea in $1.6 million bank fraud case). In all of these cases, the defendant was sentenced within the Guidelines range.

While some of these cases involve higher loss amounts in absolute terms, David Prince's victims were especially vulnerable to his crimes. Many of the victims of the Leopard Fund had jobs that did not allow them financial cushions. They were hair dressers, auto mechanics, farmers, and repairmen. Investing in the Leopard Fund caused them to loss their houses, their ability to retire, their children's college funds. David Prince's conduct has no justification. It was extremely serious and it harmed real people in a very concrete way. It deserves a serious punishment.

Second, a sentence of 96 months imprisonment would afford adequate deterrence of further criminal conduct–both for the defendant <u>and</u> the public, as 18 U.S.C. § 3553(a)(2)(B) requires.

The need for deterrence is particularly acute in this case given that David Prince has chosen not to take responsibility for his actions. David Prince stole nearly a million dollars from dozens of victims, then squandered the money in part on personal items and other non-investment expenditures. In these difficult economic times, there will be increasing temptations for individuals to engage in similar fraudulent schemes.[3] By imposing a significant custodial sentence, this Court will demonstrate both to this defendant and the public that investment fraud "does not pay" and will instead result in substantial prison time.

In terms of assessing the need for deterrence in this case, it is important to take into account that this is not a case where a civil regulatory failure or omission facilitated the defendant's investment fraud. As discussed at trial and above, the Texas State Securities Board discovered David Prince's ongoing fraud and obtained a cease and desist order against him. David Prince does not dispute that he violated the order after having agreed to it. Having intentionally disregarded prior civil regulatory attempts to stop his investment fraud, David Prince should be subject to a substantial custodial sentence which hopefully will deter him from future criminal conduct.

Furthermore, a sentence of 96 months imprisonment would protect the public from further criminal conduct by the defendant. See 18 U.S.C. § 3553(a)(2)(C). David Prince's pattern of dishonesty demonstrates that the Leopard Fund was not an isolated incident. David Prince does not respect the truth, and he does not admit when he has engaged in wrongdoing.

**C.   Restitution**

Under 18 U.S.C. § 3664(d)(5), the Court may set a date within 90 days after sentencing to make a final determination of a victim's losses. As the PSR contains no information on restitution, the government requests that restitution be determined at a later date.

**D.   Remand**

When this Court set the sentencing date in this case, it gave notice of its intention to

---

[3] David Prince's investment fraud is in no way excused or mitigated by the recent financial crisis. David Prince's investment fraud predated that crisis, having taken place in a period from 2005 to January 2007 when the economy was performing relatively well.

14

remand David Prince into custody at the time of sentencing. The United States agrees that remand at sentencing would be appropriate. At the initial detention proceedings in this matter, several victim-investors expressed that they were afraid of David Prince. David Prince has a criminal record, which includes an assault with a deadly weapon conviction. David Prince's overall record of complying with his terms of pre-trial release (particularly the various electronic monitoring conditions that were effect) is quite mixed, resulting in numerous Form Eight memoranda and bail review hearings before Magistrate Judge Trumbull. (CR 10, 11, 14, 15, 18, 20, 28, 46). Finally, there is some concern that David Prince may pose a serious risk of flight after sentencing given that (1) he put up no funds of his own to secure his release bond; (2) the FBI was only able to locate and arrest him at his location in Saratoga as a result of surveillance; and (3) victim-investors have expressed concerns that he previously attempted to evade civil process in civil proceedings related to his investment scheme. Remand is appropriate in light of the above totality of circumstances.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court sentence David Prince to 96 months imprisonment in addition to the other terms and conditions enumerated by the Probation Department.

DATED: February 2, 2012                    Respectfully submitted,

                                              MELINDA HAAG
                                              United States Attorney

                                              _____/s/_____
                                              JOSEPH FAZIOLI
                                              ALLISON MARSTON DANNER
                                              Assistant U.S. Attorneys